**Dated: December 04, 2007**
**The following is ORDERED:**



_____
Tom R. Cornish
UNITED STATES BANKRUPTCY JUDGE

_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

IN RE:

**McCURTAIN MUNICIPAL AUTHORITY**　　　Case No. 07-80363
　　　　　　　　　　　　　　　　　　　　Chapter 9

　　　　　　Debtor.

### O R D E R

On the 7th and 22nd days of August, 2007, the Objection to Petition and Motion to Dismiss Petition, filed by Ken's Services, Inc. ("Creditor"), Debtor's Response to Objection to Petition and Motion to Dismiss Petition, and Movant's Reply to Debtor's Response, filed by Creditor, came on for evidentiary hearing. Appearances were entered by Clark Wood, Attorney for Creditor, and Betty Williams, Attorney for Debtor. The parties also presented closing arguments at a telephonic hearing held October 10, 2007. After reviewing the evidence and testimony presented, this Court does hereby enter the following findings and conclusions in conformity with Rule 7052, Fed. R. Bankr. P., in this core proceeding.

Debtor filed for relief under Chapter 9 of the Bankruptcy Code on April 2, 2007. Debtor is

a public trust created under state law and the sole beneficiary is the town of McCurtain, Oklahoma. Debtor is controlled by the town of McCurtain, but is a separate entity. The Debtor's board of trustees is composed of citizens of the town. Debtor provides water and sewer services to the citizens of the town of McCurtain. McCurtain is a very small, rural town with a population less than 500. Testimony revealed that the majority of residents are low-income citizens.

Creditor submitted a bid to construct a waste water system for Debtor, which was accepted in May, 2001. A contract was entered between the parties for the construction of the waste water system. The contract price was $1,519,887.40. A change order dated May 21, 2001, took $81,210.80 out of the contract price due to the funds available at that time and to provide some contingency. A change order dated December 21, 2001, added the $81,210.80 back into the contract because funding was made available through a grant and a loan from the Oklahoma Water Resources Board. Creditor was aware of the change order procedure, however Creditor never submitted a change order for consideration.

Creditor would submit monthly pay requests, which set out the quantities of materials and amount of labor performed. Ten percent of the monthly requests was deducted as retainage. The project was completed in May, 2003. Of the original $1,519,887.40 contract amount, Creditor was paid a total of $1,495,166.73, a difference of $24,720.67. Debtor believed it only owed Creditor $17,110.65, and the overseeing engineer believed that no payment was due to the Creditor. *See* Debtor's Ex. 64.

Creditor demanded payment of the retained earnings, as well as the final monthly pay request. Creditor ultimately filed suit against Debtor in Haskell County District Court, Oklahoma. On October 25, 2006, the state court granted partial summary judgment to the Creditor. Creditor then

2

offered to confess judgment for clean-up costs in the amount of $7,190.54, which the Debtor accepted. On February 12, 2007, a Journal Entry of Judgment was entered in favor of the Creditor in the amount of $218,897.29. The issues of costs, attorney fees and interest were reserved for later determination.

An application to appoint a receiver was filed by the Creditor in Haskell County in what Creditor describes as an attempt to get a financial picture of the Debtor and analyze the borrowing and assessment powers that could be used. It was also filed to determine if any grants were available to pay the judgment. On February 24, 2007, the Board of Trustees of the Debtor voted to retain Betty Williams as attorney, and a Resolution dated March 20, 2007, authorized the Chapter 9 bankruptcy filing. Approximately one week before the hearing on the Creditor's application to appoint a receiver the Debtor filed its bankruptcy petition.

Debtor made several offers of settlement. After judgment, on February 28, 2007, Debtor offered the Creditor $10,000, which represented all of its unencumbered funds at that time. Creditor did not respond. Also, as early as December, 2003, the Debtor made a settlement offer. A letter written by Mr. Clark Wood dated December 10, 2003, referenced an offer by the Debtor to pay $34,602.80 as a final payment. In the letter, Mr. Wood stated that Ken's would accept $100,000.00. *See* Movant's Ex. 23. Another letter written by Mr. Wood dated May 10, 2006, indicated that Debtor asked Creditor to make an offer of settlement. Mr. Wood went on to state that the Creditor was willing to accept $226,087.83. *See* Movant's Ex. 24.

Mr. Kenneth Goad, president of Creditor, stated at trial that soon after the final inspection of the sewer system he attempted to set up a meeting to negotiate his unpaid bill, but that the Debtor refused to attend any meeting. Mr. Goad further testified that Debtors did not respond to his

3

Case 07-80363   Doc 94   Filed 12/04/07   Entered 12/04/07 16:33:08   Desc Main
Document   Page 3 of 10

December, 2003, offer to accept $100,000.00 as payment in full, nor did they respond to his May, 2006, offer to accept $226,087.83.

Creditor makes much of the fact that there has been no attempt by the Debtors to assess or tax the residents to pay the judgment. Testimony indicated that the residents of McCurtain already pay significantly higher water and sewer bills than residents in the surrounding areas.

Creditor's Objection to the Petition alleges that the Debtor has failed to fulfill the statutory requirements under § 109(c) and § 921(c) of the Bankruptcy Code. Specifically, Creditor argues that the Debtor was not insolvent at the time of the bankruptcy filing and that the petition was not filed in good faith. Creditor alleges that the Debtor has misrepresented its financial condition by understating its assets, overstating its secured debt and misrepresenting its gross income. Creditor further argues that Debtor failed to negotiate in good faith with the Creditor.

Creditor points out the substantial differences between the Debtor's audits and the schedules filed in the bankruptcy case. The audits for 2004, 2005 and 2006 were prepared by Mr. Robert Kershaw, a certified public accountant who performs 80-90 town and city audits annually. Mr. Kershaw testified at trial that the audits were prepared under the modified cash approach instead of using generally accepted accounting principles. Mr. Kershaw stated that the 2006 audit shows a negative cash flow, and further testified that as of June 20, 2006, the Debtor was insolvent.

Mr. Brian Roberts, a certified public accountant, testified at trial that Debtor was not insolvent as of June 30, 2006. In fact, Mr. Roberts stated that Debtor had approximately $120,000.00, of which $70,000.00 was unrestricted money.

"To be eligible for chapter 9 relief, a petitioner must meet several criteria, which are to be construed broadly to provide access to relief in furtherance of the Code's underlying policies." *In*

4

*re Hamilton Creek Metro. Dist.,* 143 F.3d 1381, 1384 (10th Cir. 1998). Section 109(c) provides:

> (c) An entity may be a debtor under chapter 9 of this title if and only if such entity -
> (1) is a municipality;
> (2) is specifically authorized, in its capacity as a municipality or by name, to be a debtor under such chapter by State law, or by a governmental officer or organization empowered by State law to authorize such entity to be a debtor under such chapter;
> (3) is insolvent;
> (4) desires to effect a plan to adjust such debts; and
> (5)(A) has obtained the agreement of creditors holding at least a majority in amount of the claims of each class that such entity intends to impair under a plan in a case under such chapter;
> (B) has negotiated in good faith with creditors and has failed to obtain the agreement of creditors holding at least a majority in amount of the claims of each class that such entity intends to impair under a plan in a case under such chapter;
> (C) is unable to negotiate with creditors because such negotiation is impracticable; or
> (D) reasonably believes that a creditor may attempt to obtain a transfer that is avoidable under section 547 of this title.

11 U.S.C. § 109(c).

> A municipality is insolvent as defined by the Bankruptcy Code if it is:
>
> (i) generally not paying its debts as they become due unless such debts are the subject of a bona fide dispute; or
> (ii) unable to pay its debts as they become due.

11 U.S.C. § 101(32)(C). "While the test under § 101(32)(C)(I) looks to current, general nonpayment, the test under 101(32)(C)(ii) is an equitable, prospective test looking to future inability to pay." *Hamilton,* 143 F.3d at 1384. The insolvency tests are applied as of the date of the petition. *Id.* Under § 101(32)(C)(ii), insolvency is examined on a cash-flow basis. *Id.* at 1386. Further, the inability to pay debts as they become due "depend[s] upon the inescapable quality of the obligation and the certainy that it cannot be met. Mere possibility or even speculative probability is not enough." *In re Town of Westlake,* 211 B.R. 860, 865 (Bankr. N.D. Tex. 1997) (citations omitted).

5

When the judgment against the Debtor was entered, the debt was mature and inability to meet it was certain, therefore Debtor was unable to meet debts as they mature under § 101(32)(C)(ii). The Debtor was rendered insolvent and unable to pay its debts as they became due on February 12, 2007. Further, prior to the petition date Debtor was unable to pay other debts as well, including the fees for the Debtor's attorney in the state court action. As for Mr. Roberts' testimony that the Debtors had $70,000.00 in unrestricted cash, this is still far less than the judgment amount.

Creditor argues that the Debtor failed to impose assessments on the residents of McCurtain. However, the failure to impose assessments, if relevant at all, concerns "good faith" issues, not a Debtor's insolvency status. *In re Sullivan County Reg'l Refuse Disposal Dist.,* 165 B.R. 60, 76 (Bankr. D. N.H. 1994).

As for the discrepancies between the audits and the schedules, the values in the audits are not market values, rather they are depreciated expenditure values. Further, testimony revealed that there would be great difficulty in locating a willing buyer for a sewer system and a water system. Due to the difficulty in determining a market value for the systems, this Court is unable to find that the Debtor undervalued the systems in the schedules. Testimony also indicated that the records of the Debtor were in disarray prior to the bankruptcy filing. Debtor hired a CPA to update records, and schedules were filed based on the CPA's work.

This Court finds that the Debtor satisfies the insolvency requirement under § 109(c)(3) and § 101(32)(C).

Under § 109(c)(5), Debtor must demonstrate that it meets at least one of the four alternative requirements set out in the subsection. As stated above, the Debtor did make offers of settlement. Debtor made an offer in 2003 and in 2006 requested an offer of settlement from the Creditor. Then

6

in February, 2007, soon after the judgment was entered, Debtor made an offer that represented all of its unencumbered funds at that time. This Court finds that Debtor met its burden of satisfying § 109(c)(5) by showing that it did negotiate in good faith with the Creditor pursuant to § 109(c)(5)(B). Creditor also urges dismissal of this case based upon its belief that Debtor did not file its Petition in good faith. Section 921 of the Bankruptcy Code gives this Court discretion to order dismissal for failure to file in good faith. That section provides in part:

> (c) After any objection to the petition, the court, after notice and a hearing, may dismiss the petition if the debtor did not file the petition in good faith or if the petition does not meet the requirements of this title.

11 U.S.C. § 921(c). Good faith is not defined in the Bankruptcy Code. "The primary function of the good faith requirement has always been to ensure the integrity of the reorganization process by limiting access to its protection to those situations for which it was intended." *Sullivan,* 165 B.R. at 80 (citation omitted). As stated by another bankruptcy court in the Tenth Circuit:

> In the Chapter 11 context, "good faith" has been described as a requirement which "prevents abuse of the bankruptcy process by debtors whose overriding motive is to delay creditors without benefitting them in any way or to achieve reprehensible purposes." Determining whether a petition has been filed in good faith requires an evaluation of a debtor's "financial condition, motives, and the local financial realities." These comments would appear to be equally applicable, at least in part, to a Chapter 9 petition.

*In re Villages at Castle Rock Metropolitan Dist. No. 4,* 145 B.R. 76, 81 (Bankr. D. Colo. 1990) (citations omitted).

Creditor argues that the Debtor demonstrated a lack of good faith because its purpose in filing for bankruptcy relief was to avoid the appointment of a receiver, thereby avoiding any investigation into its financial affairs. Also, Creditor argues that lack of good faith is evidenced by the fact that funds were available to pay the Creditor following the completion of the project, and that the Debtor

7

failed to secure funding to pay the judgment either through the exercise of its power to assess its customers or through borrowing the funds necessary to pay its debt.

The facts do not support the Creditor's allegation, nor does this Court believe, that the Debtor filed bankruptcy only to avoid the appointment of a receiver. The application to appoint a receiver was filed on February 23, 2007, and the Board of Trustee's meeting regarding bankruptcy was February 24, 2007. Notice of the meeting was given at least 48 hours prior to the meeting. While the appointment of a receiver certainly was a concern to the Debtor, it was not the only reason for filing bankruptcy. Testimony of Mr. Roy Johnson, the chairman of the Board of Trustees at the time of the bankruptcy filing, indicated that the bankruptcy was filed due to the Debtor's inability to pay the judgment.

Additionally, the evidence established that the Debtor had difficulty making payments under its contract with the Creditor from the beginning of the project. Ms. Gaylene Riley, loan specialist for the USDA, Rural Development, testified that the parties were informed in December of 2002 that Rural Development would not authorize any future payments on the project, because project charges exceeded the contract amount. Although Rural Development discontinued payments to the Creditor, the Debtor did continue to make payments to the Creditor from other funds until it could no longer do so. The Creditor failed to submit a change order to secure payment for additional work performed as was required by the terms of the Contract. She advised Mr. Goad that the Debtor did not have sufficient funds to pay the amount he claimed was due. However, the Debtor did offer to pay the Creditor approximately $34,000, which represented all of the Debtor's unencumbered funds at the time of the offer, but the Creditor refused to accept that amount.

Creditor claims that the Debtor had funds available to pay the Creditor, and that its failure to

8

use those funds to pay the Creditor is evidence of bad faith. Creditor points to audits listing unrestricted cash accounts and grant money, as well as payments to an engineer, as evidence that the Debtor could have paid Creditor had it chosen to do so. However, Mr. Johnson testified that most of the Debtor's funds were earmarked for other expenses, such as loan agreements, debt coverage requirements, and other known expenses. He explained that payments to the project engineer and inspector were made because the Board found those charges to be necessary. Additional work was required by these persons because the Creditor did not complete the project by the original deadline. Although the Debtor may have had some funds available, the amount of those funds did not equal the $100,000 the Creditor asked for in December of 2003, nor the $218,897.29 judgment entered in February of 2007.

Creditor also argues that the Debtor could have generated revenues to pay the Creditor by assessing citizens. However, failure to do so does not necessarily indicate that this bankruptcy was filed in bad faith. *See In re Chilhowee R-IV School Dist.*, 145 B.R. 981, 983 (Bankr. W.D. Mo. 1992). The evidence presented was that the water and sewer rates in McCurtain are significantly higher than rates in the surrounding areas. The evidence also showed that McCurtain is a very small community consisting primarily of low-income citizens. Based upon this evidence, it is unlikely that sufficient funds could have been generated through the imposition of higher water and sewer rates or an assessment on McCurtain citizens. The Court cannot find a lack of good faith simply because the Debtor failed to initiate either of these options.

Borrowing funds was another option available to the Debtor, according to the Creditor, and the failure to do so is evidence of a lack of good faith. Mr. Johnson testified that the Debtor was unable to borrow any funds to pay the Creditor's judgment. He stated that the cash flow of the

9

Debtor was insufficient to secure borrowed funds, based upon information from the 2006 audit. Ms. Riley also testified that her agency would not have loaned money to the Debtor for the purpose of paying a judgment. Ms. Angela Thompson, analyst for the Oklahoma Water Resources Board, stated that Debtor would not have been eligible for a loan from that agency because the Debtor could not have met its debt coverage requirements. Although Creditor's witness, Mr. Roberts, disputed the claim that the Debtor was unable to secure financing to pay the judgment, the Court does not find the failure to borrow funds to be compelling evidence of a lack of good faith.

The scope and nature of the Debtor's financial difficulties were well-known to this Creditor. Upon review of the evidence regarding the Debtor's financial position, the Court does not find a lack of good faith in the Debtor's decision to seek the protections of bankruptcy.

Therefore, the Court orders that the Creditor's Objection to Petition and Motion to Dismiss Petition are hereby **denied**.

# # #